UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LISA S.,[1]

                                            Plaintiff,              Case # 24-CV-6338-FPG

v.                                                                 DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                           Defendant.
_____

## INTRODUCTION

Plaintiff Lisa S. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 5, 6. For the reasons that follow, Plaintiff's Motion for Judgment on the Pleadings is DENIED, the Commissioner's Motion for Judgment on the Pleadings is GRANTED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In February 2021, Plaintiff applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 66. She alleged disability since April 2020 due to bipolar syndrome, anxiety, depression, mental illness, social anxiety, and a right-leg hamstring tear. *Id.*

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 3.

1

In June 2023, Administrative Law Judge Michael Devlin ("the ALJ") issued a decision finding that Plaintiff is not disabled. Tr. 23-37. In April 2024, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I.     District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.    Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b).[3] If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

---

[3] Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 2020, her alleged onset date. Tr. 25. At step two, the ALJ found that Plaintiff had severe impairments of persistent depressive disorder, major depressive disorder, bipolar disorder, unspecified anxiety disorder, borderline personality disorder, and post-traumatic stress disorder. Tr. 26. At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 28.

Next, the ALJ determined that Plaintiff had the RFC to perform the full range of work at all exertional levels, but with a number of nonexertional limitations. Tr. 29-30. At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 35. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. Tr. 35-36. Accordingly, the ALJ found that Plaintiff is not disabled. Tr. 37.

### II. Analysis

Plaintiff argues that remand is warranted on two grounds. First, the ALJ erroneously evaluated the opinion of psychiatric consultative examiner Amanda Slowik, Psy.D. Second, the ALJ failed to sufficiently develop the record. The Court analyzes each argument below.

#### a. Dr. Slowik's Opinion

In June 2021, Dr. Slowik conducted a psychiatric evaluation, after which she diagnosed Plaintiff with persistent depressive disorder and unspecified anxiety disorder. Tr. 722. Dr. Slowik opined that Plaintiff had a number of functional limitations, ranging from mild to marked. As is relevant here, Dr. Slowik concluded that Plaintiff's abilities to regulate emotions, control behavior,

and maintain well-being were "moderately to markedly limited." *Id.* Dr. Slowik identified no other "marked" limitations. The ALJ found Dr. Slowik's opinion partially persuasive, accepting it to the extent she "assessed moderate limitations." Tr. 34. Ultimately, the ALJ crafted an extremely restrictive RFC for Plaintiff: she could only perform simple work in a low-stress environment; occasionally interact with co-workers and supervisors; and have little to no contact with the general public. Tr. 29-30.

Plaintiff argues that the ALJ erred in weighing Dr. Slowik's opinion because his analysis of the supportability and consistency factors was based on "selectively chosen evidence." ECF No. 5-1 at 13. The Court disagrees.

Under 20 C.F.R. § 404.1520c(b)(2), the most important factors that an ALJ must consider in determining the persuasive value of a medical opinion are "supportability" and "consistency." The former pertains to the degree to which the medical source supports her opinion with "objective medical evidence and supporting explanations," while the latter pertains to the degree to which the opinion is consistent with "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 404.1520c(c)(1), (2). An ALJ's failure to explain the supportability and consistency of a medical opinion in his decision constitutes a procedural error. *See id.* § 404.1520c(b)(2); *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022).

However, if a searching review of the record assures the court that "the substance of the regulation was not traversed," a court may affirm the Commissioner's decision despite the error. *Loucks*, 2022 WL 2189293, at *2. Thus, even if an ALJ fails to explicitly evaluate the consistency and supportability factors with respect to a particular medical opinion, remand is warranted only if the reviewing court is "unable to fathom the ALJ's rationale in relation to [the] evidence in the

record." *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982). By contrast, if the reviewing court can "adequately 'glean' how the ALJ [implicitly] weighed the consistency and supportability factors," remand is not justified because the procedural error is considered harmless. *Davidia B. v. Comm'r of Soc. Sec.*, No. 21-CV-384, 2023 WL 5361000, at *5 (W.D.N.Y. Aug. 22, 2023).

In this case, the ALJ expressly considered the supportability factor. *See* Tr. 34. He recognized that, as a general matter, Dr. Slowik's conclusions were "relatively" supported by her clinical findings. *Id.* Though Plaintiff accuses the ALJ of "downplay[ing] the abnormal findings," ECF No. 5-1 at 14, the Court does not read the decision in that manner. To the contrary, the ALJ affirmatively recognized that the supportability factor weighed in favor of Dr. Slowik's opinion. *See* Tr. 34. The reason the ALJ departed from Dr. Slowik's opinion was because of its inconsistency with the record as a whole. *See id.* Because the regulations do not treat any single factor as dispositive, an ALJ may reasonably reject an opinion even where, as here, he acknowledges that it is well-supported by objective medical evidence and explanation. *See* 20 C.F.R. § 404.1520c(b)(2), (c); *see also, e.g.*, *Tashica P. v. Comm'r of Soc. Sec.*, No. 24-CV-228, 2025 WL 1067974, at *3-4 (W.D.N.Y. Apr. 9, 2025) (affirming ALJ's treatment of consultative opinion where the ALJ "recognized that [the consultative examiner's] opinion was arguably supported by objective medical evidence at the time it was issued, but ultimately found it not persuasive in light of its inconsistency with the later medical evidence" (internal quotation marks and citation omitted)).

On the consistency factor, Plaintiff contends that the ALJ selectively relied on evidence that did not "reflect the entire record." ECF No. 5-1 at 15. In substance, however, Plaintiff merely disagrees with the manner in which the ALJ resolved conflicts in the record, which is not a basis for remand. *See David H. v. Comm'r of Soc. Sec.*, No. 20-CV-1471, 2023 WL 2601968, at *2

6

(W.D.N.Y. Mar. 22, 2023) (stating that it "is the ALJ's job to resolve conflicting record evidence, and the Court must defer to that resolution" (internal quotation marks omitted)).

As the ALJ recognized, Plaintiff has a long history of depression, anxiety, and other mental impairments, for which she has received treatment over the years with varying success. Tr. 31, 427, 429. Plaintiff has routinely struggled with mood swings, impulsive behavior, depression, insomnia, and anxiety, which causes her to have low energy, bouts of sadness and/or tearfulness, and difficulty concentrating. Those symptoms, which are recorded throughout the medical records, arguably weigh in favor of a finding disabling impairment.

On the other hand, the ALJ also recognized that Plaintiff has been capable of performing activities that are "not consistent with disabling symptoms and limitations." Tr. 31. Most prominently, Plaintiff has routinely engaged in part-time work. *See* Tr. 432. From May 2019 until the outbreak of the COVID-19 pandemic, Plaintiff worked at a daycare on a part-time basis. *See id.* Although Plaintiff claims that she left that job because "mentally [she] couldn't handle things," Tr. 49, a contemporaneous report indicates that she stopped working because the "daycare . . . closed due to COVID-19," Tr. 432; Tr. 719. Plaintiff began working again in March 2022, after she had divorced and was in more dire financial need. *See* Tr. 843. Plaintiff reported "enjoying" her part-time job at a chocolate store, Tr. 841, and she felt "it [was] a good job for her" despite her difficulty concentrating and making "too many mistakes," Tr. 843. Plaintiff has also reported an ability to care for many of her own needs, including cooking, cleaning, laundry, childcare, showering, and dressing herself, Tr. 694, 722, 836. Plaintiff's activities corroborate the opinions of two state agency consultants, who opined that Plaintiff was capable of "perform[ing] simple work in a low contact setting." Tr. 75; *see also* Tr. 100.

Accordingly, notwithstanding the severity of Plaintiff's symptoms, there was sufficient evidence on which the ALJ could rely to conclude that Plaintiff had the "capacity for unskilled work with limited interaction and exposure to stress." Tr. 35.

In opposing this conclusion, Plaintiff seeks to draw more favorable inferences from the record evidence. But even if Plaintiff's preferred inferences may be reasonably drawn from the record, that is insufficient to demonstrate that the ALJ's chosen inference was erroneous. *See David H.*, 2023 WL 2601968, at *2 ("A claimant cannot obtain remand merely by citing evidence that arguably supports more restrictive limitation; she must articulate how the ALJ's contrary finding was erroneous." (internal quotation marks and brackets omitted)). For example, Plaintiff cites her reports that that she performed poorly at her most recent job to argue that she is disabled. *See* ECF No. 5-1 at 15-16. But nothing compelled the ALJ to draw the inference that Plaintiff was unable to perform her work competently; Plaintiff had been able to maintain that employment for over a year despite her claims of poor performance. Similarly, Plaintiff contends that the ALJ should not have relied so heavily on the objective observations of one of her treating psychiatric nurse practitioners, because at those same visits Plaintiff indicated her "symptoms were not improving" and she "need changes in medications." ECF No. 5-1 at 19. All these notations demonstrate, however, is that there was conflicting evidence regarding the extent of Plaintiff's limitations, which the ALJ was required to resolve based upon the record as a whole and in light of the medical opinions available.

Plaintiff further faults the ALJ for downplaying the observations of one of Plaintiff's social workers, Rachael Boehmer. *See* ECF No. 5-1 at 17-18. But in challenging the ALJ's view that Boehmer's observations were "not [] particularly reliable," Tr. 32, Plaintiff misinterprets the ALJ's concern—namely, that Boehmer was simply repeating "examination findings" that did not actually

8

reflect her observations at the appointments. *See id.* This is a reasonable concern because, among other things, Boehmer repeatedly stated that Plaintiff's insomnia caused "decreased work school performance" at times when Plaintiff was neither working nor in school. *See, e.g.*, Tr. 826-38; *see also* Tr. 32.

In sum, the Court can discern no error in the ALJ's treatment of Dr. Slowik's opinion. Remand is not warranted on this ground.

### b. Development of the Record

In the summer of 2021, Plaintiff attended one week of a two-week partial hospitalization program. Plaintiff left the program when she "got news that her ex-husband [] sold their home" and she needed to "find somewhere else to live." Tr. 732. At the hearing, Plaintiff's attorney noted that the records pertaining to the program had not been obtained, but said: "I was trying to get those records for you, haven't come in yet but I don't think we need to leave the record open for them." Tr. 45. The ALJ therefore closed the record. *Id.* Plaintiff now asserts that the ALJ erred by failing to obtain these records. *See* ECF No. 5-1 at 21-23.

The Court rejects this claim. To be sure, "the ALJ, unlike a judge in a trial, must [him]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotation marks omitted). This duty "exists even when . . . the claimant is represented by counsel." *Id.* But courts have held that "[a]n ALJ has taken reasonable steps to complete the medical record when [he] asks claimant's attorney at a hearing if the medical records before her are complete, and the attorney answers affirmatively." *Jennifer M. v. O'Malley*, No. 23-CV-494, 2024 WL 5378976, at *5 (N.D.N.Y. July 23, 2024) (collecting cases). That is what occurred here. Moreover, the ALJ had in his possession hundreds of pages of treatment notes, multiple medical opinions, and Plaintiff's hearing

testimony. Plaintiff does not articulate how the records from a week-long partial hospitalization program could have put her applications into a significantly different light, such the record must be deemed incomplete in their absence. *Cf. Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022) (no gap in the record where administrative record included "medical opinions, treatment notes, and test results from 2016 to 2018, as well as [the claimant's] own testimony").

The Court will not remand the case on this basis.

## CONCLUSION

For all of the reasons stated, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 5) is DENIED, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 6) is GRANTED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 5, 2025
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York